# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GRANT F. SMITH** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES** | ) | Civil Action No. 17-cv-1796 (TSC) |
| **DEPARTMENT OF TREASURY** | ) | |
| | ) | |
| | ) | |
| **UNITED STATES OFFICE OF** | ) | |
| **PERSONNEL MANAGEMENT**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Grant F. Smith, proceeding *pro se*, has sued Defendants United States

Department of Treasury ("Treasury") and the Office of Personnel Management ("OPM"),

seeking to compel responses to his two Freedom of Information Act ("FOIA") requests for

personnel information regarding all Treasury employees. Defendants moved for summary

judgment under Federal Rule of Civil Procedure 56 (ECF No. 19), and Smith cross-moved for

summary judgment (ECF No. 23). In an order issued March 31, 2019, the court granted

Defendant's Motion for Summary Judgment and denied Plaintiff's Cross-Motion for Summary

Judgment. Upon further consideration of the record and for the reasons set forth below, the court

will GRANT in part and DENY in part Defendants' Motion for Summary Judgment and will

DENY Plaintiff's Cross-Motion for Summary Judgment. A revised Order will accompany this

opinion and issue separately.

# I.    BACKGROUND

Smith is a public interest researcher and founder of the Institute for Research: Middle Eastern Policy, Inc.  (ECF No. 1. ("Compl.") ¶ 5.)  On April 24, 2012, he submitted a FOIA request to Treasury seeking a list of "every Treasury Department employee," including their "first name, middle initial, last name, title, department, and phone number."  (Compl. ¶ 8, Ex. A.)  In response, Treasury provided Smith with the "Treasury Headquarters Organizational directory, the Treasury Phonebook Bureau Offices and the U.S. Department of the Treasury Organizational Structure chart."  (ECF No. 19-2 ("Defs. SOF") ¶ 2.)  Smith appealed Treasury's response because it did not identify every Treasury employee and did not identify employees of Treasury bureaus and offices.  (Compl. ¶ 10.)  Treasury then provided Smith with a link to a publicly accessible website containing a searchable database that identifies employees in all departments and agencies.  (*Id.* Ex. D.)  Treasury also denied Smith's appeal, claiming exemption 6—which protects unwarranted invasions of privacy into personnel files.  (*Id.*)

Smith submitted a second, similar FOIA request to OPM on October 15, 2012, seeking the names and titles or occupations of employees of Treasury's Office of Terrorism and Financial Intelligence ("TFI").  (*Id.* ¶ 12, Ex. E.)  After OPM forwarded the request to Treasury, Treasury produced seven heavily redacted pages and again claimed exemption 6.  (*Id.* Ex. F.)

Smith then sought review of the agencies' decisions in this court.  After Smith sued, Treasury conducted additional searches and produced additional lists of its employees from its components, including TFI, the Bureau of Engraving and Printing, the Bureau of Public Debt, the Financial Management Service, the U.S. Mint, the Office of the Comptroller of Currency, the Alcohol & Tobacco Tax and Trade Bureau ("TTB"), the Financial Crimes Enforcement Network ("FinCEN"), the Office of the Inspector General ("OIG"), the Special Inspector General for the

Troubled Asset Relief Program ("SIGTARP"), the Treasury Inspector General for Tax

Administration ("TIGTA"), and the Internal Revenue Service ("IRS"). (ECF No. 19-3 ("Dodson

Decl.") n.3.)

Treasury redacted the following phone numbers[1]:

- Business cell phone numbers for all personnel, claiming exemption 6;

- Phone numbers for all TFI employees, claiming exemption 6;

- Phone numbers for all IRS employees, claiming exemption 6; and

- Phone numbers for all FinCEN employees, claiming exemption 6 and 7(C).

Treasury also redacted names of the following categories of personnel[2]:

- Non-senior employees of Treasury components that perform law enforcement or national security functions—the U.S. Mint, TTB, FinCEN, OIG, SIGTARP, TIGTA—claiming exemption 6 and 7(C);

- Non-senior TFI employees, claiming exemption 6;

- IRS employees who participate in the "pseudonym program," which permits certain IRS employees to use pseudonyms to protect personal safety, claiming exemption 6; and

- IRS employees who hold sensitive positions, as defined by OPM, claiming exemption 6.

Treasury also withheld all names, titles, and phone numbers of employees of TFI's Office of

Intelligence and Analysis, claiming exemption 1, which protects classified material. (ECF No.

19-7 ("Mason Decl.") ¶ 8.)

---

[1] *See* Dodson Decl. ¶¶ 10, 11, 13; Hill. Decl. (ECF No. 19-6) ¶¶ 4, 6; Farley Decl. (ECF No. 19-5) ¶¶ 8, 10.
[2] *See* Dodson Decl. ¶ 11; Farley Decl. ¶ 8; Hill Decl. ¶ 4.

## II. LEGAL STANDARD

### A. <u>Summary Judgment</u>

Summary judgment is proper where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Courts must view "the evidence in the light most favorable to the non-movant[ ] and draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor. *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). When the non-moving party "is proceeding *pro se*, courts in this jurisdiction will construe the non-moving party's filings liberally." *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). "However, a *pro se* litigant still has the burden of establishing more than '[t]he mere existence of a scintilla of evidence' in support of his position." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. <u>FOIA</u>

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). Under FOIA, federal agencies must comply with requests to make their records available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id. (quoting Pratt*, 673 F.2d at 413) (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)–(b).

The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). The government agency bears the burden of showing that nondisclosed, requested material falls within a stated exemption. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Summary judgment may be based solely on information provided in the agency's supporting declarations. *See Am. Civ. Liberties Union (ACLU) v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) ("An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions. Typically it does so by affidavit."). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619 (citations omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks omitted)). The agency's declarations are "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

In order to overcome an agency's "showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)). By corollary, "[a] non-moving party's complete failure to come forward with evidence to demonstrate the existence of a genuine issue of material fact constitutes a 'reason' for the grant of summary judgment under [Rule 56(e)]." *Smith v. U.S. Dep't of Justice*, 987 F. Supp. 2d 43, 47 (D.D.C. 2013).

## III.    ANALYSIS

### A.  <u>Adequacy of OPM's Search</u>

Smith argues that OPM failed to adequately search for responsive records to his request for a list of TFI employees. OPM declares that it referred the request to Treasury but does not explain whether it had responsive records or how the search was conducted. Because OPM failed to provide sufficient detail regarding its search for responsive records, its motion for summary judgment is denied without prejudice. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (internal quotation omitted) ( holding that "agency affidavits . . . [that] do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient). OPM must either conduct an adequate search for records or provide enough detail to show that no responsive records exist.

In reply, OPM argues—for the first time—that Smith did not exhaust his administrative remedies and therefore his suit should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Reply at 2.) This argument comes too late, and the court will not consider it. A

party cannot raise new arguments in a reply brief because it deprives the opposing party of the opportunity to respond. *See Performance Contracting, Inc. v. Rapid Response Const., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010).

Accordingly, the court will deny summary judgment to both parties, without prejudice, on the adequacy of OPM's search.

**B. <u>Treasury's Claimed Exemptions</u>**

1. <u>Exemption 6</u>

FOIA Exemption 6 permits an agency to withhold "personnel and . . . similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The threshold inquiry is whether the requested information is contained in a type of file covered by the exemption." *Milton v. U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (citing *Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982). The term "similar files" is "intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, at 11 (1966)). Because the information in the file "'need not be intimate' . . . the threshold for determining whether information applies to a particular individual is minimal." *Milton*, 783 F. Supp. 2d at 58 (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C.Cir.1990)). Exemption 6 covers only information specific to a particular individual that is "personal information—information somehow related to an individual's life." *N.Y. Times Co.*, 852 F.2d at 606. This can include "a person's name, address, place of birth, employment history, and telephone number." *Shapiro v. U.S. Dep't of Justice*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) (collecting cases); *see also Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875–76

(D.C. Cir. 1989). Treasury obtained the withheld information, names and phone numbers of non-senior employees and cell phone numbers for all employees, from its databases containing personnel records. (Dodson Decl. ¶ 7.) Because the information is particular to individual employees, the threshold inquiry for exemption 6 is satisfied.

The analysis does not end there, however. Once the threshold inquiry is met, the court must determine whether disclosure of the requested information would be an unwarranted invasion of privacy. *Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 690 F.2d at 260. The court must strike a "balance between the protection of an individual's right to privacy and the preservation of the public's right to government information." *Hall v. CIA*, 268 F. Supp. 3d 148, 159 (D.D.C. 2017) (quoting *Washington Post Co.*, 456 U.S. at 599). The individual's privacy interest must be "substantial, as opposed to *de minimis*." *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (internal citation omitted). The scope of that privacy interest "will always be dependent on the context in which it has been asserted." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quoting *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996)). On the disclosure side, the "public interest" is limited to the "core purpose" for which Congress enacted the FOIA: to "shed . . . light on an agency's performance of its statutory duties." *Hall*, 268 F. Supp. 3d at 159 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Therefore, there is no public interest in disclosing information about individuals when such information shows "little or nothing about an agency's conduct." *Milton*, 783 F. Supp. 2d at 58 (quoting *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C.Cir.1991)).

Employees can have a cognizable privacy interest in their names. *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152–53 (D.C. Cir. 2006); *Nat'l Ass'n of Retired Fed.*

*Emps.*, 879 F.2d at 875–76.  In *Judicial Watch*, the D.C. Circuit held that exemption 6 protected

disclosure of the names of FDA employees who worked on approval of an abortion drug.  The

Court explained that exemption 6 protects "bits of personal information, such as names and

addresses, that the release of which would 'create[] a palpable threat to privacy.'"  *Id.*  Here,

Treasury redacted the names of a limited group of non-senior employees: those who work in

offices that perform national security and law enforcement functions, IRS employees who are

part of a pseudonym program to protect employees' personal safety, and IRS employees who

work in "sensitive" positions (as defined by OPM).  (Dodson Decl. ¶ 11, Farley Decl. ¶ 8, Hill

Decl. ¶ 4.)  Courts in this Circuit have routinely held that employees in law enforcement and

with national security functions have a substantial privacy interest in their names because

disclosure "could subject them to embarrassment or harassment in the conduct of their official

duties and personal affairs." *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (quoting

*Halpern v. FBI*, 181 F.3d 279, 296–97 (2d Cir.1999)); *see also Welenc v. U.S. Dep't of Justice*,

No. 17-cv-0766, 2019 WL 2931589, at *8 (D.D.C. July 8, 2019) (holding FBI Special Agents

and support personnel had substantial privacy interest in their names); *Walston v. U.S. Dep't of

Def.*, 238 F. Supp. 3d 57, 67 (D.D.C. 2017) (holding same for low-level Department of Defense

employees); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116–

17 (D.D.C. 2005) (holding same for low-level DHS and TSA employees).  Here, the court finds

that the non-senior Treasury employees have a similar substantial privacy interest in their names.

Whether all Treasury employees have a privacy interest in their work cell phone numbers

is a closer call.  Federal employees have a privacy interest that includes the "right to control

information related to themselves and to avoid disclosures that 'could conceivably subject them

to annoyance or harassment in either their official or private lives.'" *Elec. Privacy Info. Ctr.*,

384 F. Supp. 2d at116–17 (quoting *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)).  Cell phone numbers implicate a different privacy interest from landline office phone numbers because employees carry cell phones with them outside the office and regular work hours.  Dodson declares that Treasury "employees' privacy interests greatly outweigh any interest a member of the public may have in contacting those employees at any time of day.  Office phone number were released when available, and when they did not conflict with another exemption.  It is reasonable to expect a member of the public to contact an employee at the office, and not on a cell phone they may have in their possession at all times."  (Dodson Decl. ¶ 10.)  The court agrees.  Disclosing the numbers for work cell phones, which employees maintain in their homes and on their person, could subject them to the type of harassment exemption 6 was designed to prevent, and therefore the court finds that the Treasury employees maintain a privacy interest in protecting their work cell phone numbers.  *Cf. Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18–19 (D.D.C. 2013) (finding EPA employees had substantial privacy interest in their official email addresses).

Treasury also withheld office phone numbers of FinCEN employees, claiming exemptions 6 and 7(C) in its declaration, but provided a limited explanation for doing so.  Further, in briefing Treasury pointed to no caselaw to support a substantial privacy interest in office phone numbers nor did it address whether such information is protected under exemption 7(C), which exempts information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Because Treasury failed to explain how exemptions 6 and 7(C) applied to office phone numbers, the court denies summary judgment to both parties on this issue without prejudice.  However, because Treasury's declaration provided some information on the issue, the court will permit the

agency to provide additional information and file a renewed motion for summary judgment. *See White Coat Waste Project v. U.S. Dep't of Veterans Affairs*, 404 F. Supp. 3d 87, 107 (D.D.C. 2019) (permitting agency to submit additional information about privacy interest).

Treasury also withheld "phone numbers" for TFI employees (Farley ¶ 10) and all IRS employees (Hill ¶ 6). But Treasury's affidavits are unclear about whether these are personal or office phone numbers. Therefore, there is insufficient factual basis to determine the personal privacy interest in withholding disclosure of those phone numbers, and the court denies summary judgment on this issue. Again, because Treasury provided some information, the court will permit the agency to provide additional information and file a renewed motion for summary judgment. *See White Coat Waste Project*, 404 F. Supp. at 107.

Because there is a cognizable privacy interest in non-senior Treasury employee names and Treasury employees' cell phone numbers, the court must examine Smith's asserted public interest. Smith asserts that disclosure of the requested information will allow the public to understand the extent of Treasury's "regulatory capture", *i.e.*, its domination by the interests it is charged with regulating. (Pl. Cross-Mot. at 9–19, 30, 45, 50–52.) Smith is particularly focused on whether TFI is run by people who support Israel, and he seeks to:

> better understand the flow of many personnel as they enter []TFI from Israel advocacy organizations or on the basis of their pledged unconditional support for Israel, work on secret projects, then flow back out to Israel advocacy organizations or other organizations continuing to advocate for Israel . . . . The public will learn for the first time how far down into []TFI the Israel lobby's capture really goes.

(*Id.* at 51–52.) Smith also seeks to reveal "selective enforcement" of sanctions policy. (Pl. Br. at 30.) He claims this information is in the public interest because TFI "may soon be carrying out the same kind of targeting of Americans under the Israel Anti-Boycott Act that it presently selectively carries out against disenfranchised foreigners" and gaining "insight into an

organization that appears to be secretly working as hard to provoke a war with Iran as OSP did for Iraq." (*Id.*)

Balancing the employees' privacy interests against the asserted public interest favors protecting the employees' privacy. While Smith is entitled to public information that "shed[s]. . . light on an agency's performance of its statutory duties," *Hall*, 268 F. Supp. 3d at 159, the requested information does little to inform the public about how Treasury operates. Disclosing names of non-senior Treasury employees in sensitive positions or cell phone numbers of any employee will not allow the public to better understand how the agency performs its statutory duties. And it will not advance Smith's goal of showing "how far down into []TFI the Israel lobby's capture really goes" or how TFI chooses which enforcement operations to conduct.

Smith's request seems designed to obtain personal information that would allow him to infer the ethnic heritage, religion, and/or national origin of certain Treasury employees. The court cannot find that such an inquiry is in the public interest, but does find that disclosure would increase the risk of harassment to those employees. Further, for TFI, which combats terrorism financing and other financial crimes, disclosure would risk employees "becom[ing] targets [of] foreign adversaries." (Farley Decl. ¶ 11.) This invasion of personal privacy and potential danger to TFI employees outweighs the minimal public interest in disclosure. Moreover, Treasury disclosed landline and office phone numbers where available. (Dodson Decl. ¶ 10.) Because disclosing the names of certain non-senior employees and cell phone numbers for all Treasury employees would result in a "clearly unwarranted invasion of personal privacy," Treasury properly invoked exemption 6 to withhold this information, and the court will grant summary judgment to Treasury as to these issues.

2. Exemption 1

Treasury invoked exemption 1 for withholding the names, titles, and phone numbers of non-leadership OIA employees. (Mason Decl. ¶ 7–8.) In evaluating whether an agency has properly withheld information under exemption 1 "the only question is whether the disputed document is properly classified under the applicable Executive Order." *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 718 F.3d 899, 904 (D.C. Cir. 2013). Executive Order 13,526 governs proper classification under § 552(b)(1). Exec. Order No. 13,526, 75 Fed. Reg. 707 (Jan. 5, 2010). It requires that: 1) an "original classification authority" classify the information; 2) the information be "owned by, produced by or for, or [be] under the control of the United States Government"; 3) the information falls under one or more of the eight categories enumerated in § 1.4 of Executive Order 13,526; and 4) an "original classification authority determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" that the authority can identify or describe. *Id.* § 1.1.

First, the Mason Declaration establishes that Mason has proper classification authority pursuant to Executive Order 13,526. (*See* Mason Decl. ¶ 2.) Second, the names, titles, and phone numbers of OIA employees are "owned by, produced by or for, or are under the control of the United States Government." Third, the information pertains to "intelligence activities and foreign activities of the United States" under sections 1.4(c) and (d) of Executive Order 13,526. (*Id.* ¶ 8.) Fourth, the Mason Declaration explains that revealing the names, titles, and phone numbers for OIA employees would "when compiled in the aggregate" reveal "the individuals responsible for making sensitive decisions about Treasury's activities in support of the National Intelligence Program." (*Id.*) "The disclosure of this sort of information would provide our adversaries and foreign intelligence targets with insight into OIA's foreign intelligence activities

and capabilities.  This information could[] then be used to develop the means to target OIA employees[] and degrade and evade those activities and capabilities."  (*Id.*)

Mason's summary of the potentially harmful national security consequences from disclosure satisfies the final requirement for classification under Executive Order 13,526.  *See Competitive Enter. Inst. v. U.S. Dep't of Treasury*, 319 F. Supp. 3d 410, 419 (D.D.C. 2019) ("[T]he disclosure of information that may impact future negotiations between the United States and foreign nations, or that may damage the United States' ability to speak candidly with or about foreign nations[] poses sufficient potential harm to 'foreign relations' to justify classification under EO 13,526 and nondisclosure under Exemption 1."  (citing *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 306 F. Supp. 2d 58, 65–66 (D.D.C. 2004)).  Therefore, Treasury has met its burden of showing that exemption 1 protects the information sought from disclosure, and the court will grant Treasury summary judgment as to TFI's invocation of exemption 1.

### C.  <u>Form or Format</u>

Smith argues that Treasury failed to produce documents in the form or format requested. (Pl. Cross-Mot. at 57.)  FOIA requires an agency to "provide the record [requested] in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."  5 U.S.C. 552(a)(3)(B).  Treasury did not respond to Smith's argument on this issue, and therefore the court will treat it as conceded.  Therefore, Treasury must re-produce the requested documents in a form or format readily reproducible, consistent with FOIA, or provide Smith with a sufficiently detailed explanation on whether the requested form or format is readily reproducible.  Accordingly, the court will deny summary judgment to both parties, without prejudice.

## D. **Vaughn Index and Segregability**

Finally, Smith argues that Treasury failed to provide a "*Vaughn* index justifying the redactions or segregability." The government need not always justify its withholdings on a document-by-document basis and can, through reasonably detailed affidavits, meet its burden of proof by categorical showings. *See Tax Analysts v. IRS*, 414 F. Supp. 2d 1, 4 (D.D.C. 2006) (collecting cases). Given that there were only two FOIA exemptions at issue and Treasury provided four detailed affidavits, the court finds that Treasury was not required to provide a *Vaughn* index.

As to segregability, the court cannot find on this record that Treasury has met its burden. Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." § 552(b). Treasury claims that "all information withheld was either exempt from disclosure pursuant to a FOIA exemption or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material," (Dodson Decl. ¶ 14), and that "[e]very effort has been made to release all segregable information," (Farley Decl. ¶ 14). These conclusory and formulaic recitations of the segregability elements are insufficient for the court to find that all reasonably segregable portions of the material were released. *See Cavezza v. U.S. Dep't of Justice*, 113 F. Supp. 3d 271, 277 (D.D.C. 2015) ("The agency must provide a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." (internal quotation and citation omitted)). Therefore, the court will deny summary judgment to both parties, without prejudice, and order Treasury to provide Smith with sufficiently detailed explanations of its segregability efforts.

## IV.  CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment will be GRANTED in part and DENIED in part and Plaintiff's Cross-Motion for Summary Judgment will be DENIED.  A corresponding, revised Order will issue separately.

Date:  January 23, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge